CONGDON, Respondent, *v.* OLDS et al., Appellants.

[Submitted July 6, 1896. Decided September 28, 1896.]

Partnership—*Mining partners—Promissory note—Instructions.*—In an action on a promissory note signed by one of the defendants, which signature was alleged to be a firm name under which all the defendants were operating a mine as partners, it was error to charge the jury, if effect, that if parties associate themselves together for the purpose of carrying on a business and agree to contribute funds, pay losses and share profits, such an association is a general partnership without regard to whether the business is mining or not, since the elements of a partnership stated in the instruction would exist in a mining partnership as well as in a general partnership, and the instruction withdrew from the jury the consideration of whether the defendants were a mining partnership.

Same—*Same—Instructions.*—Error in such instruction would not be rendered harmless because of evidence that defendants were liable by their conduct in reference to the note, even if they were a mining partnership, since under such instruction the jury would not be required to make inquiry as to whether the facts showed that the defendants were liable as a mining partnership.

Same - *Same—Promissory note—Instructions.*—Where the defendants alleged that they were not conducting the mine as a partnership at the time the note sued on was given, but that an incorporated company, of which they were stockholders, was conducting the business, a verdict for the plaintiff will not be set aside as contrary to an instruction to find for the defendants if the jury found that the corporation was conducting the business, where there was evidence tending to show that while the corporation had been formed it was not in fact conducting the business.

Same—*Evidence—Admissions of partner.*—Proof of the admissions of a defendant, who was not in court, that the other defendants sustained the relation of partners to him, would not be evidence of the partnership as against the other partners. (*Wiggin* v. *Fine,* 17 Mont. 575, cited.)

Appeal—*Briefs—Pages of transcript.*—An assignment of error as to the admission of testimony will not be considered on appeal where the appellant fails to point out the testimony in his brief by reference to the page in the transcript.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION on promissory note. Judgment was rendered for the plaintiff below by McHATTON, J. Reversed.

Statement of the case by the justice delivering the opinion.

The plaintiff and the defendant Olds together signed a promissory note payable to the Silver Bow National Bank of Butte. After renewals of the note, the plaintiff was obliged to pay the same. He then brought this action against all these defendants. The reason for joining these defendants other than Olds, was that plaintiff claimed, and so alleged in his complaint, that when the note was signed, the defendant Olds, together with defendants Hoffman, Northrup, Cox, Kountz, Whitefoot, Ferris, Cooper and Hartman, constituted a partnership, which partnership was engaged in the business of operating the Kitty Morris mine, and that the partnership was carried on in the firm name of "L. B. Olds," and that the signature of "L. B. Olds" on the note in question was not the individual signature of Mr. L. B. Olds, but was the signature of said partnership. Upon this theory the case was tried. The plaintiff recovered judgment. The defendant Olds did not appear upon the trial, and the case proceeded as against the defendants other than him. Those defendants now appeal from the judgment, and from the order denying a new trial.

*Hartman Bros. & Stewart* and *Smith & Word,* for Appellants.

*F. T. McBride,* for Respondent.

DE WITT, J.—There are three alleged errors complained of which we shall treat. The first is the action of the court in treating the partnership as a general or trading partnership. This matter arose in several ways upon the trial and in the giving of the instructions. It is not necessary to follow this error into every place where it occurred. It is sufficient to treat it as it occurred in instruction No. 3, which the court

gave. That instruction is as follows : "The court instructs the jury that where several parties associate themselves together for the purpose of carrying on a business and mutually agree to contribute funds for and to bear losses and share the profits of the business, that such an association constitutes a general partnership, and it is immaterial whether the business to be engaged in is mining or other business, and in such cases each partner becomes the agent of the partnership for the purpose of the partnership."

The appellants complain that by this instruction the court treated the partnership of the defendants as absolutely a general or trading partnership, and excluded from consideration the question of whether the defendants were a mining partnership. They contend that the court proceeded upon the theory that there was no such thing as a mining partnership in this state prior to the enactment of the Civil Code of July 1, 1895, sections 3350 *et seq.* If this were the case it was error, for mining partnerships differing from general partnerships have been recognized in the decisions of this court as existing in this state for many years. (*Nolan* v. *Lovelock*, 1 Mont. 227; *Boucher* v. *Mulverhill*, 1 Mont. 306; *Hirbour* v. *Reeding*, 3 Mont. 15; *Southmayd* v. *Southmayd*, 4 Mont. 112; *Galigher* v. *Lockhart*, 11 Mont. 113; *Harris* v. *Lloyd*, 11 Mont. 406; *Anaconda Copper Mining Co.* v. *Butte & Boston Mining Co.*, 17 Mont. 523.)

Respondent also contends that the court properly gave this instruction for the reason that it appears from the evidence that there was no mining partnership in this case. We think that there was evidence tending at least to show that the partnership in question was a mining one and not a general one. But the court instructed the jury, in No. 3 quoted, that, if parties associate themselves together for the purpose of carrying on a business and agree to contribute funds, pay losses and share profits, such an association is a general partnership without regard whether the business is mining or not. We are of opinion that this was not correct, for while these elements recited are those of a general partnership, they are certainly also

elements of a mining partnership. In every partnership the parties associating themselves together contribute funds and share losses and profits. One partner may make his contribution in money and another may make it in labor or in furnishing the mining premises to the partnership. One may bear the loss of money that he puts in, another may bear the loss of his time and labor which he contributes. We cannot imagine a mining partnership in which the parties do not share losses and profits. Certainly no one will enter a mining partnership with the agreement that he shall pay all the losses, nor with the agreement that his partner shall receive all the profits. The facts recited in instruction No. 3 may be those of a general partnership, but they are also part of the facts existing in a mining partnership, and it was error to hold absolutely that those facts constitute a general partnership only. It is true that a general partnership may exist, if the contract between the parties is to that effect, even if the business of the partnership is solely in mines. (*Duryea* v. *Burt*, 28 Cal. 569; *Settembre* v. *Putnam*, 30 Cal. 490; *Decker* v. *Howell*, 42 Cal. 636.) It is held in *Decker* v. *Howell*, *supra*, that an agreement to share profits and losses equally tends to prove the existence of an ordinary partnership instead of a mining partnership, but it is not there held that simply the sharing of losses and profits in itself constitutes absolutely a general partnership. The distinction between a general or trading partnership and a non-trading partnership is recognized not only in the mining states, where mining partnerships are frequent, but in other jurisdictions where non-trading partnerships other than mining ones are of frequent occurrence. Many of the rules of general partnerships obtain in mining partnerships, but the latter have other rules peculiar to themselves. Some of the great distinctions between a general partnership and a mining partnership are the questions of the *delectus personarum*, and the authority of one partner to bind the firm by the issuance of commercial paper of the firm. As to joint owners operating a mine it is said in *Skillman* v. *Lachman*, 23 Cal. at page 204 : "They form what is termed a mining partner-

ship, which is governed by many of the rules relating to ordinary partnerships, but which has also some rules peculiar to itself—one of which is that one person may convey his interest in the mine and business, without dissolving the partnership. (*Ferreday* v. *Wightwick*, 1 Russ. & Mylne, 49.) Still there may be a partnership in the working of a mine subject to the rules relating to an ordinary partnership in trade. (Story on Partnerships, § 82.) And this relation of partnership may be constituted either by express stipulation or by implication deduced from the acts of the parties. (Rockw. on Mines, 575.) But in the case of an ordinary mining partnership something more will be required to raise the presumption of liability arising from persons holding themselves out to the world as partners than would be necessary in the case of an ordinary partnership. Such persons, in the absence of other circumstances, cannot fairly be presumed to have intended to render themselves liable to all the consequences of a commercial partnership.''

Mr. Justice Field said in *Kahn* v. *Smelting Co.*, 102 U. S. page 645 : '' Mining partnerships as distinct associations, with different rights and liabilities attaching to their members from those attaching to members of ordinary trading partnerships, exist in all mining communities; indeed, without them successful mining would be attended with difficulties and embarrassments, much greater than at present.''

The learned justice then quotes with approval *Skillman* v. *Lachman*, above quoted. See, also, *Quinn* v. *Quinn*, 81 Cal. 14; *McConnell* v. *St. Clair Denver et al.*, 35 Cal. 365; *Jones* v. *Clark et al.*, 42 Cal. 180 ; *Charles* v. *Eshleman*, 5 Col. 107; *Higgins* v. *Armstrong*, 9 Col. 38; *Judge* v. *Bruswell*, 13 Bush. (Ky.) 67; *Manville* v. *Parks et al.*, 7 Col. 128; *Deardorf's Admr.* v. *Thatcher et al.*, 78 Mo. 128; *Pease* v. *Cole*, 53 Conn. 53; *Bissell* v. *Foss*, 114 U. S. 252; Bates on Partnership, § 163, also § 14 and 329 with cases cited; Parsons on Partnership, § 37 with note; § 306 with note and § 85 and cases cited.

We are therefore of opinion that the court in giving instruc-

tion No. 3 was in error, for the reason that the elements of a partnership there recited do not in themselves absolutely constitute a general partnership.

Respondent, however, contends that if instruction No. 3 were error, it was not material, because the evidence shows that the defendants were liable even if they were a mining partnership, that is to say that their conduct in reference to this note and the money obtained thereby was such as to render them liable even as a mining partnership. But even if the evidence supports the respondent's contention in this respect, the error in instruction No. 3 was prejudicial, because it instructed the jury absolutely that the defendants were liable as a general partnership, and under such instruction the jury would not be required to make any inquiry as to whether the defendants were a mining partnership, or any inquiry as to whether the facts showed that the defendants were liable as a mining partnership.

Another alleged error is as follows: The defendants alleged and sought to prove that they were not conducting the mine as a partnership at the time this note was given, but that an incorporated company, called the Butte & Bozeman Mining Co., of which defendants were stockholders, was conducting the business. The court instructed the jury in effect that if they found that the corporation was conducting the business and not these defendants, they must find for the defendants. Appellants contend that the evidence was uncontradicted that the corporation was doing the business, and that therefore the verdict was contrary to the instructions. But we think that this contention cannot be sustained, for the reason that in our opinion there was evidence tending to show that, while the corporation had been formed, it was not in fact conducting the business. This assignment of error we are, therefore, of opinion cannot be sustained.

Appellants contend that almost, if not entirely, all of the testimony tending to establish a partnership between the defendants was that of statements made by the defendant Olds who was not in court, and made to the effect that the other

defendants did sustain the relation of partners to him. The appellants in their brief do not point out, under the rules of this court, this testimony by page in the transcript. They cannot therefore expect us to pick it out of the 300 pages of the record in this case. We will say, however, that our reading of the record discloses that there was very much testimony as to partnership other than that of the statements by Olds. If it were permitted by the district court to prove the fact of the partnership by the admissions of one of the alleged partners who was not present, this would not be evidence of the partnership as against the other partners. (Rice on Evidence, Vol. 1, pp. 444, 475, and Vol. 2, p. 1154; Greenleaf on Evidence, Vol. 1, § 177; *Wiggin* v. *Fine,* 17 Mont. 575.) We mention this matter, although we are not required to pass upon it, for the reason that it is not pointed out in the record as required by the rules.

For the reasons assigned the judgment and order denying a new trial are reversed, and the case is remanded with directions to grant a new trial.

*Reversed.*

HUNT, J., concurs. PEMBERTON, C. J., not sitting.